IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JAMES ROBERTS JR., | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-CV-176-O |
| | § | |
| LORIE DAVIS, Director, TDCJ-CID, | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, James Roberts Jr., a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against Lorie Davis, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

On August 31, 2015, a jury in Tarrant County, Texas, Case No. 1390094D, found Petitioner guilty on one count of continuous sexual abuse of a child under 14 years of age and one count of sexual assault of a child under 17 years of age and assessed his punishment at 50 years' and 20 years' imprisonment, respectively. Clerk's R. 97, 100, ECF No. 17-3. Petitioner's convictions were affirmed on appeal, and the Texas Court of Criminal Appeals refused his petition for discretionary review. Electronic R., ECF No. 17-1. Petitioner also challenged his convictions in a state habeas-corpus application, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. SHR[1] 14-29 & Action Taken,  ECF Nos. 17-25 & 17-21. This federal habeas-corpus petition followed.

---

[1]"SHR" refers to the record of Petitioner's state habeas proceeding in WR-90,637-01.

The evidence at trial was summarized by the state appellate court as follows:

> A grand jury indicted [Petitioner] in a two-count indictment for continuous abuse of a young child or children and sexual assault of a child. The first count alleged multiple instances of aggravated sexual assault of a child and/or indecency with a child against two victims, VM and SR—both under fourteen years of age—spanning the years between September 1, 2009, through February 22, 2014. The second count charged [Petitioner] with the sexual assault of VM, a child younger than seventeen years of age, on or about February 22, 2014.

> VM was the State's primary witness. She referred to [Petitioner] as her stepdad (though VM and SR's mother, SM, testified that she and [Petitioner] had never married). VM testified that when she was seven years old, [Petitioner] touched her vagina with his hand through her clothing. [Petitioner]'s conduct escalated over time. He began rubbing his penis against her vagina and ejaculating on her. VM said [Petitioner] sexually abused her over 100 times. When VM was in sixth grade and about 13 years old, [Petitioner] began penetrating her vagina with his penis. In February 2014, VM reported [Petitioner]'s abuse to SM, and SM reported the abuse to police.

> VM testified that [Petitioner] was circumcised and had a large mole on his upper thigh near his penis, both of which characteristics she observed when [Petitioner] was abusing her. Over [Petitioner]'s objection, the trial court admitted into evidence two photographs of [Petitioner]'s mole. SM confirmed that [Petitioner] is circumcised and has a mole on the inside of his leg by his scrotum.

> SM testified that days before VM's outcry, she was asleep in bed with [Petitioner] and their three-year-old daughter, SR. SM awoke to find [Petitioner] rubbing SR's genitals with his hand.

Mem. Op. 2-3, ECF No. 17-13 (citation and footnote omitted).

## II. ISSUES

In four grounds for relief, Petitioner raises the following claims:

(1)     his right to due process was violated by the trial court's admission of "prohibited expert opinion" testimony by Lindey Dulas, a forensic interviewer;

(2)      his right to be free from unreasonable searches and seizures under the Fourth Amendment was violated when photos of his groin were taken in a holding cell near the courtroom;

(3)     his right to effective assistance of counsel was violated by his trial counsel's failure to file a motion to suppress the photos of his groin; and

(4)     his right to effective assistance of counsel was violated by his appellate counsel's failure to give notice with the court clerk that he was challenging the constitutionality of Texas Penal Code § 21.02.

Pet. 6-7, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent does not believe that Petitioner's petition is barred by limitations, subject to the successive-petition bar, or unexhausted and procedurally barred. Resp't's Answer 5, ECF No. 18.

## IV. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing

3

evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last reasoned state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

### B. Due Process

Under his first ground, Petitioner claims that his right to due process was violated by the trial court's admission, over his objection, of the "prohibited expert opinion" testimony of Lindsey Dula, a forensic interviewer, that she had no concerns with suggestibility and that there were no "red flags" for lying during her interview with VM. Pet. 6, ECF No. 1; Reporter's R., vol. 4, 105-09, ECF No. 17-7. In the last reasoned opinion on the issue, the state appellate court addressed the claim as follows:

> [Petitioner] argues that the trial court erred by allowing the State's forensic interviewer, Lindsey Dula, to testify that VM did not show signs of lying.

> ### a. Standard of review

> We review a trial court's rulings on evidentiary objections for an abuse of discretion. A trial court does not abuse its discretion unless its ruling is arbitrary and unreasonable. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. If the trial court's "evidentiary ruling is correct on any theory of law applicable to that

ruling, it will not be disturbed."

**b. Dula's testimony and [Petitioner]'s objection**

Dula is a forensic interviewer for the Alliance for Children. She interviewed VM a few days after VM's outcry to SM. Dula testified that "suggestibility" is "the idea of either suggesting answers or bringing up a topic that wasn't raised before" and that she did not "have any suggestibility concerns with" VM. . . . She said that during her 60-minute interview with VM, she did not detect any "red flags for coaching or lying."

During a prior voir dire examination outside the jury's presence, [Petitioner] posed the following objection (among others) to Dula's testimony:

> [Petitioner's Counsel]: . . . I would object to Ms. Dula rendering an opinion on whether statements are consistent with -- I believe when she said . . . her statements would be consistent with something not being suggestive as in so many words saying that those statements are truthful. We'd object to the -- any opinion on the absence of suggestiveness attached to whatever statements were made in the interview.

> THE COURT: Well, I'll overrule that objection. She may testify within the realm of her expertise as to what are suggestive questions and whether suggestive questions were used in this instance or not. She can testify as an expert on the area of suggestibility with children in a forensic interview and whether that applied in this case or not.

> [Petitioner's Counsel]: And I would object to her testifying whether that happened in this case or not.

> THE COURT: I'll overrule that. She may testify as to that.

> [Petitioner's Counsel]: Your Honor, I have one additional related objection, and that is that she testified that she saw no red flags for lying. And that is a roundabout way of saying that she's telling the truth. We'd object to an opinion on that ground, to her issuing that opinion.

> . . .

> THE COURT: And I overrule that objection.

5

. . .

### d. The trial court erred by admitting the "lying" comment, but the error was harmless.

The State may not elicit expert testimony that a particular child is telling the truth or that child complainants as a class are worthy of belief. Nor may an expert offer an opinion on the truthfulness of a child complainant's allegations.

The State concedes that the trial court erred by allowing Dula to testify that she saw no "red flags for . . . lying." We agree. We therefore hold that the trial court abused its discretion by overruling [Petitioner]'s objection to Dula's "lying" comment and allowing Dula to testify that she saw no "red flags for. . . lying." Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. The erroneous admission of expert testimony is generally non-constitutional error to which rule 44.2(b) [of the Texas Rules of Appellate Procedure] applies. Under rule 44.2(b), we must disregard the error if it did not affect appellant's substantial rights. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury[] or had but a slight effect."

In analyzing whether the erroneous admission of expert testimony was harmful, we may consider, among other things: (1) the strength of the evidence of the appellant's guilt, (2) whether the jury heard the same or substantially similar admissible evidence through another source, (3) the strength or weakness of an expert's conclusions, including whether the expert's opinion was effectively refuted, and (4) whether the State directed the jury's attention to the expert's testimony during arguments. "Even in cases in which credibility is paramount, Texas courts have found harmless error when the inadmissible expert testimony was only a small portion of a large amount of evidence presented that the jury could have considered in assessing the victim's credibility."

Applying these factors to the evidence in this case, we conclude that the admission of Dula's "lying" comment was harmless. First, the evidence of [Petitioner]'s guilt was strong. VM testified at length and in detail about [Petitioner]'s abuse. She testified about the appearance of [Petitioner]'s penis and mole, testimony that was corroborated by SM. A forensic biologist testified that a rape kit vaginal smear from VM tested positive for semen. SM found [Petitioner] sleeping in VM's bed on several occasions. And SM actually saw [Petitoiner] sexually abusing SR. The jury also heard that [Petitioner] attempted to cut his own throat with a boxcutter when VM made her outcry to SM.

6

Second, the jury heard testimony reflecting on VM's credibility and demeanor from other witnesses. A police officer who interviewed VM after her outcry to SM testified that when VM described [Petitioner]'s abuse to him, she was "very emotional, mixed emotions at the time. She was anxious, crying. At the time, seems like she had a little anxiety." A sexual-assault nurse examiner who interviewed VM testified that VM "readily answered my questions. She was -- had eye contact and she was tearful." The jury also had the opportunity to assess VM's credibility and demeanor for themselves when VM testified.

The third factor we look to is the strength or weakness of an expert's conclusions. [Petitioner] emphasizes Dula's credentials and notes that he had no "similarly impressive expert to refute [Dula's] opinions." We agree that an expert's credentials and experience can be relevant to the strength of the expert's conclusions. But Dula's actual conclusion on VM's credibility was expressed in a two-word answer—"No, sir"—to counsel's question, "[W]ere there any red flags for coaching or lying?" This conclusion was not particularly strong and does not support a finding of harm.

Only the fourth factor—whether the State directed the jury's attention to the expert's testimony during arguments—weighs in [Petitioner]'s favor. The State drew attention to the "red flags for lying" comment in both opening and closing statements. In the State's opening statement, the prosecutor told the jury that Dula would testify that "she saw no red flags," and in closing argument, the State mentioned Dula's credentials and her no "red flags for . . . lying" testimony. But because the State did not dwell on Dula's testimony and it comprised only a small part of the State's overall argument, this factor weighs only slightly in [Petitioner]'s favor.

Considering all of the relevant factors, we conclude that, in the context of the entire case against [Petitioner], the trial court's error in allowing Dula to testify that she saw no "red flags for . . . lying" did not have a substantial or injurious effect on the jury's verdict and did not affect [Petitioner]'s substantial rights. Thus, we disregard the error.

Mem. Op. 3-10, ECF No. 17-13 (citations and footnote omitted).

A state court's evidentiary rulings are not inherently suspect and are generally not cognizable on federal habeas review of a state conviction. *See Estelle v. McGuire, 502, U.S. 62, 67 (1991); Wood v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007); *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1983). A state court's evidentiary rulings justify the granting of habeas relief only if they

violate a specific constitutional right or render the trial fundamentally unfair. *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999). Even if an evidentiary ruling is found to be a constitutional violation, the petitioner must show actual prejudice–*i.e.,* that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted). In determining whether an erroneous evidentiary ruling had a substantial and injurious effect on the jury verdict, we consider the following: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) whether there was evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case. *Cupit v. Whitley,* 28 F.3d 532, 539 (5th Cir. 1994).

The appellate court found that the complained of testimony did not have a substantial and injurious effect on the jury's verdict, and Petitioner presents no evidence, let alone clear and convincing evidence, or legal argument to demonstrate that the state court's determination that the error was harmless is either factually or legally unreasonable. His claim is wholly conclusory. Such allegations do not raise a constitutional issue in a habeas proceeding. *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000). Further, by similar reasoning of the state court, Petitioner cannot show admission of the testimony rendered his trial fundamentally unfair.

### C. Fourth Amendment

Under his second ground, Petitioner claims that the photos taken of him "in the nude" in a holding cell violated his right to be free from unreasonable searches and seizures under the Fourth Amendment. Pet. 6, ECF No. 1. In the last reasoned opinion on the issue, the state appellate court held that because Petitioner "did not make his objections to the State's motion [to photograph [Petitioner]'s "unique feature"] and the trial court's order as soon as the basis for those objections

8

became apparent," he forfeited his Fourth Amendment claim. Mem. Op. 12, ECF No. 17-13.

When a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief. *Stone v. Powell,* 428 U.S. 465, 494 (1976); *ShisInday v. Quarterman,* 511 F.3d 514, 524 (5th Cir. 2007). An "opportunity for full and fair litigation" is understood as simply "an opportunity," whether or not the defendant takes advantage of that opportunity. *Janecka v. Cockrell,* 301 F.3d 316, 320-21 (5th Cir. 2002) (citation and quotation omitted). Thus, even claims that were not actually litigated in the state courts are subject to the *Stone* rule because it is the existence of the state processes allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the rule and bars federal habeas-corpus consideration of those claims. *Hughes v. Dretke,* 412 F.3d 582, 596 (5th Cir. 2000); *Janecka,* 301 F.3d at 320. Because Texas provides a defendant an opportunity to litigate his Fourth Amendment claim, the claim is foreclosed by *Stone*.

### D. Ineffective Assistance of Counsel

Under his third and fourth grounds, Petitioner claims that his trial counsel was ineffective by failing to file a motion to suppress the photos of his groin and that his appellate counsel was ineffective by failing to "file a notice" with the appellate court clerk of his challenge to the constitutionality of Texas Penal Code § 21.02 on the basis that it violated his right to jury unanimity. Pet. 7, ECF No. 1.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on his first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 393-95 (1985); *Strickland v. Washington,* 466 U.S. 668, 688 (1984); *Anders v. California,* 386 U.S.

738, 744 (1967). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington.* 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410)); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner raised his claims in his state habeas-corpus application, which the trial court referred to a magistrate judge for findings and conclusions of law. SHR 84, ECF No. 17-25. Based on the documentary record, the magistrate judge entered the following relevant factual findings and legal conclusions:

# FINDINGS OF FACT

. . .

*Ineffective Assistance of Trial* Counsel

18.   [Petitioner] does not present any evidence, or legal authority, supporting his claim that the photographs of his groin area were inadmissible.

19.   "Prior to trial, the State filed a motion to photograph a 'unique feature' of [Petitioner's] body and served a copy of the motion on [Petitioner's] counsel. The trial court granted the motion. An investigator with the district attorney's office then took the photographs in the trial court's holdover cell. Neither the motion nor the order identifies the 'unique feature' in question. At trial, the State offered, and the trial court admitted into evidence over [Petitioner's] objections, two photographs of the mole on [Petitioner's] groin."

20.   [Petitioner] presents no authority to support his claim that the trial court's order directing the photography was not sufficient.

21.   It is reasonable that the trial court's photography order was designed to ease any embarrassment that would be inflicted on [Petitioner] by displaying his mole (and groin) at trial.

*Ineffective Assistance of Appellate Counsel*

22.   [Petitioner] presents no evidence, or authority, to support his claim that appellate counsel was required to file a "notice" informing the court that he was challenging the constitutionality of the statute.

23.   The Second Court of Appeals considered, and rejected, [Petitioner]'s constitutional challenge on its merits.

24.   [Petitioner] presents no facts that, if true, entitle him to relief.

# CONCLUSIONS OF LAW

. . .

15.   The two-prong test enunciated in *Strickland v. Washington* applies to ineffective assistance of counsel claims in non-capital cases. To prevail on his claim of ineffective assistance of counsel, the applicant must show counsel's representation fell below an objective standard of reasonableness, and there

is a reasonable probability the results of the proceedings would have been different in the absence of counsel's unprofessional errors.

16.  The Court of Criminal Appeals "must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment."

17.  "The proper standard of review for claims of ineffective assistance of counsel is whether, considering the totality of the representation, counsel's performance was ineffective."

18.  "Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation."

19.  Support for [Petitioner]'s claim of ineffective assistance of counsel must be firmly grounded in the record and "'the record must affirmatively demonstrate' the meritorious nature of the claim."

20.  An applicant is not entitled to perfect or error-free counsel. Isolated instances of errors of omission or commission do not render counsel's performance ineffective; ineffective assistance of counsel cannot be established by isolating one portion of trial counsel's performance for examination.

21.  "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"

22.  "[The] court will not second guess through hindsight the strategy of counsel at trial nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness."

23.  "[E]ach case must be judged on its own unique facts."

24.  "Under *Strickland,* the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission."

25.  Failure to file a suppression motion or to object to the admission of evidence does not necessarily constitute ineffective assistance of counsel.

26.  "[T]o successfully assert that trial counsel's failure to object amounted to

ineffective assistance, the [defendant] must show that the trial judge would have committed error in overruling such an objection."

27.    "When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible."

28.    Arrestees and jail inmates have dramatically lower Fourth Amendment rights than do typical citizens.

29.    Court-enforced searches can be used to seek evidence.

30.    The State's need for corroboration of the victim, justified the search.

31.    An order for photographing is analogous to a subpoena duces tecum and ordering [Petitioner] to display a part of his body to the jury.

32.    "[T]he search and seizure clause of the [Fourth] Amendment was not intended to interfere with the power of courts to compel, through a subpoena duces tecum, the production, upon a trial in court, of documentary evidence."

33.    "[T]here is no unreasonable search and seizure, when a [subpoena], suitably specific and properly limited in its scope, calls for the production of documents which, as against their lawful owner to whom the writ is directed, the party procuring its issuance is entitled to have produced."

34.    Just as a trial court can order a defendant to display parts of his body to the jury at trial, the trial court here was not prohibited by the Fourth Amendment from ordering [Petitioner] to submit to photographing of [Petitioner]'s body.

35.    [Petitioner] has failed to demonstrate that the evidence was inadmissible and that the trial court would have erred in denying his motion to suppress.

36.    [Petitioner] has failed to show that counsel was deficient for not moving to suppress the photographs.

37.    [Petitioner] has failed to prove that trial counsel's representation fell below an objective standard of reasonableness.

38.    A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

13

39.    "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

40.    [Petitioner] has failed to show that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel moved to suppress the photographs taken of his groin area.

41.    [Petitioner] has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different but for the alleged misconduct.

42.    [Petitioner] has failed to prove that he received ineffective assistance of trial counsel.

    . . .

*Ineffective Assistance of Appellate Counsel*

44.    In order to prevail, the applicant must present facts that, if true, would entitle him to the relief requested.

45.    Because counsel was not required to file a "notice" before attacking the constitutionality of a statute on direct appeal, and the Second Court of Appeals considered, and rejected, [Petitioner]'s constitutional challenge on its merits, [Petitioner] has failed to allege facts that, if true, entitle him to relief.

SHR 86-96, ECF No. 17-25 (citations omitted).

The magistrate judge's findings and conclusions were subsequently adopted by the state habeas judge, who also presided over the trial proceedings, as well as the Texas Court of Criminal Appeals. *Id.* at 101. Again, Petitioner presents no evidence, let alone clear and convincing evidence, or legal argument to demonstrate that the state court's determination of the claims is either factually or legally unreasonable. His claims are wholly conclusory. Such allegations do not raise a constitutional issue in a habeas proceeding. *Miller,* 200 F.3d at 282. Further, the state courts clearly

applied the proper legal standard, and, relying on the presumptive correctness of the courts' findings, the state courts' application of that standard was not objectively unreasonable under the doubly-deferential standard applied to such claims. Counsel is not required to file frivolous motions or to present frivolous arguments on appeal. *Green v. Johnson,* 160 F.3d 1029, 1037 (5th Cir. 1998); *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir. 1995).

## V.  CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 31st day of July, 2020.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

15